UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT JOHN McGILL,<br><br>                                    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                                    Respondent. | Case No.:  3:16-cv-00687-BEN<br>                  3:09-cr-02856-BEN<br><br>**ORDER DENYING DEFENDANT'S MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255**<br><br>**[Doc. Nos. 1/240]** |

    This matter is before the Court on federal prisoner Robert John McGill's ("McGill") motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct a sentence ("Motion"). The government has filed its response. This matter is fully briefed and ready for decision. For the following reasons, McGill's Motion will be denied.

<u>**BACKGROUND**</u>

    Petitioner McGill beat and strangled his wife to death while aboard a cruise ship to Cabo San Lucas, Mexico in June 2009.[1] (Doc. No. 247 at 1.) He beat his wife with such force that she suffered bruises on her internal organs, causing her liver and kidney to

---

[1]    McGill broke the victim's nose, cheek, jaw, eye socket, and 10 of her ribs. (Doc. No. 247 at 1.)

1

hemorrhage as well as her lungs, abdomen, and body cavities to fill with blood. *Id*. The beating was so severe that it caused her brain to bleed out her ears and into her sinus cavities. *Id*. at 1-2. The San Diego County Medical Examiner listed the victim's manner of death as a homicide, with the cause being "craniocerebral blunt force injuries and manual strangulation" and "thoracoabdominal blunt force injuries." *Id*. at 2.

Following the beating, McGill repeatedly confessed to killing his wife.[2] He was arrested and charged in a complaint with second-degree murder in violation of 18 U.S.C. § 1111(b). From then on, until 2014, when he exhausted his appellate remedies, McGill was represented by Reuben Cahn[3] ("Cahn"), Executive Director for the Federal Defenders of San Diego, Inc., and Todd Burns[4] ("Burns"), Supervising Attorney and Special Litigation Counsel for the Federal Defenders of San Diego, Inc. *Id*. Throughout that time, Cahn and Burns vigorously defended McGill.[5]

Two years later, Cahn and Burns successfully negotiated a plea deal with the government granting McGill the opportunity to '*request*' a sentence outside of and lower than the "mandatory life sentences" that traditionally followed "first-degree murder and

---

[2]    McGill told other cruisers "she's dead, I killed her."; he told cruise security personnel that he had attempted to defend himself and punched his wife; he told other cruise personnel that he had attacked his wife while hallucinating from eating a scorpion from a bottle of liquor; he admitted to FDI special agents that he "killed Shirley Jean McGill . . . by beating her to death with my fists in the bathroom"; during a phone call with his son, he admitted "Shirley's dead and I killed her.  Is it on TV yet? I killed Shirley by accident, well not by accident.  I'll tell ya all about it." (Doc. No. 247 at 2.)
[3]    Mr. Cahn was specifically appointed because he was approved to represent defendants in capital cases since he previously represented homicide defendants and "acted as learned counsel in federal capital prosecutions." *Id*.
[4]    Mr. Burns was a supervising attorney and special litigation counsel at Federal Defenders of San Diego, Inc. *Id*. at 3.
[5]    Cahn and Burns filed dozens of motions, took depositions of witnesses, successfully avoided the death penalty, and plead McGill to a second-degree murder charge (*rather than first-degree which was also pending*), and bargained for the opportunity to request a sentence of just 135-months before Judge Irma E. Gonzalez. *Id*.

kidnapping" charges. *Id*. at 3.  However, the terms of McGill's plea agreement expressly allowed the United States to recommend any sentence it deemed appropriate, just as it allowed McGill to seek a more lenient 135-month sentence. *Id*.   Cahn and Burns vigorously advocated for a 135-month term in exchange for his plea of guilty to second-degree murder.[6]   The probation officer and government counsel both disagreed with defense counsel's mitigated proposal and urged Judge Gonzalez to instead impose a sentence of life.[7] *Id*. at 4.

McGill acknowledged in the plea agreement that he faced a "maximum of life in prison," that the "Guidelines are only advisory, not mandatory, and [that] the Court may impose a sentence more severe or less severe than otherwise applicable under the guidelines, up to the maximum in the statute of conviction." *Id*.  Moreover, McGill recognized that the sentencing judge was not bound by the guidelines and could impose a sentence up to the maximum as provided by statute, including life in prison.  Id. Additionally, McGill acknowledged that he was aware that any estimate of the probable sentence provided by defense counsel was merely a prediction, not a promise, and was **not binding on the Court**. *Id*.

During his plea colloquy, McGill (*who has a college level education*) affirmed that he understood each of the terms and conditions called for by his plea agreement and that he was "satisfied with the services of his attorneys. *Id*. at 5.  R197 at 5-6 (Tr. of July 14, 2011 Change of Plea Hrg.); *id*. at 10 (Court: "I don't want you pleading guilty thinking

---

[6]     Cahn and Burns filed - objections to the presentence report with exhibits totaling *270 pages*; a sentencing memorandum with exhibits totaling *280 pages*; produced and lodged a lengthy sentencing video.  They did all the actions to paint a portrait of a devoted father and teacher of disadvantaged children, who inexplicably committed the murder while "*extremely* intoxicated." *Id*. at 4.

[7]     The United States expressly recommended that the court depart upward in this case to account for the "unusually heinous, cruel, brutal and degrading way" that McGill killed his wife. *Id*.

that you'll receive a particular sentence. Do you understand?" McGill: "Yes, your honor.")

At his sentencing hearing on December 8, 2011, McGill acknowledged that he had considered the PSR (*which recommended a life term*), stated that he had considered the other sentencing materials submitted in the case (*which recommended a life term*), that he was prepared to go forward with sentencing having reviewed those materials. *Id*. at 5-6. After considering all the facts and evidence in the case, Judge Gonzalez determined a life term was sufficient but not greater than necessary under the 18 U.S.C. § 3553(a) factors and sentenced McGill to life in prison. *Id*. at 6.

McGill's judgment became final on October 6, 2014, when the Supreme Court denied his petition for writ of certiorari. *United States v. McGill*, 11-50519, 12-50244 (Ninth Circuit Dkt. Entry 57).

McGill now collaterally challenges his conviction and sentence pursuant to 28, U.S.C. § 2255. McGill timely filed the instant motion to vacate, set aside or correct sentence pursuant to § 2255 (Doc. No. 240) on March 21, 2016. The government filed its response on May 2, 2016 (Doc. No. 247). Defendant raises nine grounds for relief, including lack of subject matter jurisdiction and ineffective assistance of counsel.

## **LEGAL STANDARD**

Under § 2255, a movant is entitled to relief if the sentence: (1) was imposed in violation of the Constitution or the laws of the United States; (2) was given by a court without jurisdiction to do so; (3) was in excess of the maximum sentence authorized by law; or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Speelman*, 431 F.3d 1226, 1230 n.2 (9th Cir. 2005). If it is clear the movant has failed to state a claim, or has "no more than conclusory allegations, unsupported by facts and refuted by the record," a district court may deny a § 2255 motion without an evidentiary hearing. *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986).

# DISCUSSION[8]

**GROUND 1:** *Subject Matter Jurisdiction Claim* – **McGill asserts that the District Court Lacked Subject Matter Jurisdiction**.

McGill asserts that no "undisputed evidence or positive facts establish the alleged crime occurred in the special maritime and territorial jurisdiction of the United States." R242 at 7 (Pet.). (Doc. No. 247 at 18.)

18 U.S.C. § 7(8) provides that the "special maritime and territorial jurisdiction of the United States" includes "any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States."

In this case, both McGill and the victim were United States citizens, aboard a foreign vessel of Panamanian registry, the Carnival Elation, which departed from San Diego, California on July 11, 2009, and was scheduled to return to San Diego on July 16, 2009, at the time of the murder. *Id.* This is enough to establish that the District Court possessed special maritime and territorial jurisdiction set out in § 7(8). *See United States v. Neil*, 312 F.3d 419 (9th Cir. 2002).

Thus, McGill has failed to make a showing that the District Court lacked jurisdiction or that he was prejudiced by the Court's exercise of jurisdiction over him. Accordingly, this claim fails.

**Ground 2:** *Ineffective Assistance of Counsel Claims* – **McGill asserts Counsel was ineffective for failing to challenge the District Court's Subject Matter Jurisdiction**.

As a preliminary matter, the Court is surprised by McGill's assertions against his former counsel. It is worthy to mention that McGill was appointed two of among the

---

[8] The Court determines there is no need for an evidentiary hearing.

very best defense attorney's available in this district.  Both are considered highly skilled, formidable counselors at law, who are equally well respected by the bench and bar.

McGill asserts that his counsel rendered ineffective assistance when they failed to "properly investigate and present evidence to negate subject matter jurisdiction."  R242 at 4 (Pet.).  Id. at 19.

To prevail on an ineffective assistance of counsel claim, a defendant *must show both* that his counsel's performance fell below an objective standard of reasonableness and that the deficiency in his counsel's performance prejudiced him.  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  There is a "strong presumption" that counsel's conduct was reasonable.  *Id*. at 689.  To establish deficient performance, a defendant must demonstrate that counsel did more than just commit an error, but rather that counsel performed outside the "wide range of professionally competent assistance."  *Id*. at 690.  With respect to prejudice, a defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id*. at 694.  A "reasonable probability" means "[t]he likelihood of a different result must be substantial, not just conceivable."  *Harrington v. Richter*, 562 U.S. 86, 112 (2011).  Conclusory allegations, unsupported by specifics, are subject to summary dismissal, as are contentions that in the face of the record are wholly incredible. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).  Moreover, "[t]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

Next, contrary to McGill's assertion, the record reflects Cahn and Burns did challenge the Court's Subject Matter Jurisdiction.  On September 14, 2009, and again on July 19, 2010, counsel filed motions to dismiss the Indictment and Superseding Indictment for failing to charge the required jurisdictional element.  (*See* Doc. Nos. 21,

6

84.)  Both Motions ultimately were denied, and no further challenges were made as it would have been meritless.

Thus, McGill fails to make a showing of deficient performance by defense counsel and fails to show prejudice as well.  Accordingly, this claim fails.

**Ground 3:** *Ineffective Assistance of Counsel Claims* **– McGill asserts counsel was ineffective for failing to advise him about the maximum sentence faced and the mandatory restitution he would be responsible for, thereby making his plea not knowingly and voluntarily.**

McGill asserts that his counsel rendered ineffective assistance when they advised "him that 19.8 years was the 'maximum sentence he faced' and 'there was no legal basis for the judge to go above the maximum guideline range of 19.8.'  If they had, McGill claims 'he would have elected to proceed trial' instead of accepting the plea offer.'" (Doc. Nos. 242 at 5; and 247 at 19.)

As a general proposition, counsel is afforded wide latitude in formulating trial tactics and strategy.  *Hensley v. Crist*, 67 F.3d 181, 185 (9th Cir. 1995).  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Strickland*, 466 U.S. at 690; see also *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980) (stating "[m]ere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation").

In this case, there is simply no support for McGill's assertion.  However, even if Cahn and Burns had, as McGill alleges, predicted that a guilty plea would lead to a statutory maximum of 19.8 years, the Ninth Circuit has consistently held that sentencing predictions are not grounds for prejudice.  *See*, e.g., *Womack*, 497 F.3d at 1003 (finding that the defendant was clearly informed of the potential sentence and accordingly could not demonstrate he was prejudiced by his attorney's prediction); *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990) (holding that the petitioner "suffered no prejudice from his attorney's prediction because, prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely

7

with the court"); *United States v. Garcia*, 909 F.2d 1346, 1348 (9th Cir. 1990) (explaining that an erroneous sentence prediction "does not entitle a defendant to challenge his guilty plea"); *United States v. Turner*, 881 F.2d 684, 687 (9th Cir. 1989) (finding that an inaccurate prediction does not constitute ineffective assistance), overruled on other grounds, *United States v. Rodriguez-Razo*, 962 F.2d 1418 (9th Cir. 1992).

Finally, the record does not support McGill's assertion that he only plead guilty because he believed he would receive no more than 19.8-years in exchange for his guilty plea. All terms and conditions of the agreement were contained in the plea agreement which he admitted to reviewing with trial counsel. *Id.* Specifically, during the plea colloquy of his change of plea hearing on July 14, 2011, he acknowledged reviewing the plea agreement with his attorneys and confirmed he understood the maximum penalties: up to life in prison and a $250,000 fine. (R197 at 7.) For good measure, Judge Gonzalez revisited that understanding a second time to ensure he understood that the guideline calculations did not identify any particular sentence he was guaranteed to receive. *Id.* at 8-9. McGill also confirmed that he was satisfied with the services of his attorneys. *Id.* at 6.

Next, at the December 8, 2011 sentencing hearing, the Court confirmed on the record with defense counsel that McGill was advised that if the sentence he received exceeded 19 years, 8 months, he was free to appeal it. (Doc. No. 247 at 20.) Furthermore, the Court notes that at no time prior to, during or within the weeks following the sentencing hearing did McGill assert that he was unaware of the possibility that he could be sentenced to more than 19.8 years or that he alternatively desired to withdraw his plea and proceed to trial rather than accept the governments plea offer.

The record demonstrates McGill was aware the Court would ultimately determine his sentence.

Accordingly, without a showing of deficient performance, prejudice, or involuntariness, this claim fails.

**Ground 4:** *Ineffective Assistance of Counsel Claims* – **McGill asserts counsel was ineffective for misunderstanding the law and later failing to advise him of the involuntary intoxication defense to second degree murder, rendering his plea involuntary.**

McGill asserts that his counsel rendered ineffective assistance when they allegedly failed to advise him about the defense of "involuntary intoxication" as well as "heat of passion" and "sudden quarrel" as potential defenses to the crime of second-degree murder, a crime he now claims he did not commit. (Doc. Nos. 240 at 4-11; 247 at 26-27.)

The government contends that Cahn and Burns failure to discuss the above defenses with McGill was not deficient advice. First, a defense based on voluntary intoxication is available only for a specific intent crime. *United States v. Burdeau*, 168 F.3d 352, 456 (9th Cir. 1999). Second-degree murder is a general intent crime. *United States v. Lopez*, 575 F.2d 681, 684 (9th Cir. 1978). Thus, counsel's recommendation not to pursue a voluntary intoxication defense was actually competent advice. *See United States v. Birdinground*, 114 F. App'x 841, *1 (9th Cir. 2004) (unpublished) (district court did not err by refusing to give voluntary intoxication instruction for second-degree murder charge). Moreover, as to "Heat of Passion," it requires "circumstances that would incite an ordinary, reasonable person to kill" which wasn't present in this case. *United States v. Wagner*, 834 F.2d 1474, 1487 (9th Cir. 1987).[9]

The Court finds that Cahn and Burns did not misunderstand the law or fail to perform effectively. As already discussed, the defenses that McGill now believes he was

---

[9]     Wagner's suggestion that his "sudden quarrel" with officer Harris mitigates his culpability is absurd, for no reasonable person would be driven to kill by an officer's lawful efforts to stop a fight. Officer Harris was unarmed and, at great danger to himself, was attempting to restrain Wagner from continuing his attack." *See United States v. Wagner*, 834 F.2d 1474, 1487 (9th Cir. 1987).

entitled to assert were not available to him. Without more, this allegation is conclusory, unsupported by any specifics, and accordingly, subject to summary dismissal. *See Blackledge*, 431 U.S. at 73-74; *Shah*, 878 F.2d at 1161.

Thus, the Court agrees that McGill cannot demonstrate that he would not have pled guilty to the second-degree murder charge, given the pendency of the first-degree murder and kidnapping charges carrying mandatory life terms as well. Accordingly, this claim fails.

**Ground 5:** *Ineffective Assistance of Counsel Claims* **– McGill asserts counsel was ineffective for permitting him to plead to an agreement that "offered no benefit."**

McGill asserts that his counsel rendered ineffective assistance when they allowed him to sign a plea agreement that provided no benefit or contractual consideration for his [agreement to plea to second-degree murder] but worsened his position for sentencing purposes. (Doc. Nos. 240 at 12; 247 at 27-28.)

The government contends the evidence, in this case, was strong because of McGill repeatedly confessing to murdering his wife. (*See* Doc. No. 247 at 27-28.) This led McGill to spend the next two years trying to convince the government to offer him a plea deal to second-degree murder which carried up to a life sentence. *Id.* To bring closure to the victim's family, the government agreed to allow McGill the opportunity '*to seek*' (not a guarantee of) a 135-month sentence in exchange for his guilty plea.

The Supreme Court recognizes that "there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). Accordingly, the Ninth Circuit holds that "a defendant does not have a constitutional right to a plea bargain." *United States v. Osif*, 789 F.2d 1404, 1405 (9th Cir. 1986). Even when trial counsel does initiate plea negotiations, the Government is not obligated to offer a plea bargain if it prefers to go to trial. *See Weatherford*, 429 U.S. at 561.

As discussed *supra*, it took McGill two years to get the government to agree to a second-degree murder plea deal allowing him to seek a 135-month sentence for killing his wife. This fact was memorialized on the record during McGill's sentencing hearing. (Tr. of Dec. 8, 2011, Sent. Hrg.) ("The plea agreement, in this case, your honor, was the most difficult decision of my career. We desperately wanted closure for [the victim's] family . . .. But that goal of closure came at a very steep price, your honor. We gave up our opportunity to get a verdict from a jury that would have required a life sentence for Mr. McGill, and instead, all of us, as you've heard today, all of us put our faith in you."). "Solemn declarations in open court carry a strong presumption of verity." *United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir. 1987). So, McGill's assertion that Cahn and Burns were ineffective for allowing him to sign a plea offer that provided a two-level reduction for acceptance of responsibility and the opportunity to seek a 135-month sentence is baseless and without merit.[10]

Thus, even if McGill could prove Cahn and Burns deficient performance, he fails to show how he was prejudiced by counsel's attempts to secure a plea agreement. Accordingly, this claim fails.

> **Ground 6:** *Ineffective Assistance of Counsel Claims* – **McGill asserts counsel was ineffective for failing to object to Rule 11 colloquy deficiencies, which triggered plain error standard on appeal.**

McGill asserts that his counsel rendered ineffective assistance when they failed to object to the Court's failure to give him [McGill] notice of his defenses and misinformed him about his guideline calculations and restitution resulting in Rule 11 colloquy deficiencies, triggering application of the plain error standard on appeal. (Doc. Nos. 240 at 13-16; 247 at 28.)

---

[10] Had McGill gone to trial instead of signing the plea offer, he would still have been susceptible to a life sentence without any departures.

At the change of plea hearing on July 14, 2011, it is undisputed that McGill was made aware of the maximum possible penalty, including imprisonment, fine, mandatory minimum penalty and mandatory restitution. As for the information regarding the Court's obligation to calculate the applicable "sentencing-guideline range and to consider possible departure sentencing factors," beyond advising McGill that the plea agreement identified a pre-departure guideline calculation resulting in an adjusted offense level of 36, the Guidelines were not specifically addressed at the hearing. Fed. R. Crim. P. 11(b)(1)(M). But it was not constitutionally defective assistance of counsel not to object at the hearing, because McGill was fully aware that the parties had not agreed as to the calculation of the Guidelines for his case, and that the Court would make the sentencing determination based on the Guidelines and other factors that were yet to be determined. This was made plain in the Plea Agreement and was apparent from the discussion at the hearing.

From his motion, it would seem McGill believes that at the change of plea hearing the Court should have specially addressed any applicable departures or enhancements that would have applied, and that the Court should have informed him of the exact sentence he would receive under the Guidelines. As the Ninth Circuit has stated, a district court fulfills its obligations under Rule 11(b) when it informs the defendant of the maximum term of imprisonment on each of the counts with which the defendant is charged, and any mandatory minimum sentence on any count because Rule 11 does not require the sentencing court to inform the defendant of the applicable guideline range or the actual sentence he will receive. The change of plea hearing was not the occasion for the Court to inform McGill as to what specific enhancements or downward departures it would apply because the government had not filed any relevant notices or motions and there was no other basis, such as a PSR, for determining what factors would apply under the Guidelines and what McGill's sentence was likely to be. For one thing, the parties had ONLY agreed that McGill could seek a shorter term than life, which was 19.8 years. Under the terms of the Plea Agreement and from the tenure of the change of plea hearing, McGill knew the parties had not reached an agreement as to the length of sentence, and that generally, when

imposing a sentence, the Court would "calculate the applicable sentencing-guideline range and [ ] consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a)." Fed. R. Crim. P. 11(b)(1)(M). It was not a deficient performance for his counsel not to make an objection when counsel knew his client was aware, in general terms, how the Court would make a sentencing determination.

McGill also cannot show prejudice. McGill's counsel's failure to object at the hearing could not have been prejudicial, because movant was informed of the possible maximum term of imprisonment—life—and he pleaded guilty knowing the range. If McGill was willing to plead guilty facing a term of life, the longest possible sentence, he cannot establish that he would not have pleaded guilty and would have insisted on going to trial had his counsel objected and the Court had explained, in general terms, that the Court would calculate the Guidelines range but that it might depart or vary from that range and impose a sentence less than life. As stated above, at the time of the change of plea hearing, the Court was not obligated to inform McGill of what his exact punishment would be because the Guidelines are advisory, the parties had not agreed upon a recommended sentence, and there were disputes of fact as to the enhancements. The Court finds Ground Six is without merit because McGill cannot establish that his counsel's performance was deficient in failing to object to the Rule 11 colloquy or that he was prejudiced thereby because he knew the range of punishment he was facing and how, in general terms, the Court would make a sentencing determination.[11] *Strickland,* 466 U.S. at 687.

Accordingly, this claim fails.

///

///

---

[11]     It is likely that McGill's claim is borne out of disappointment that the Court imposed a sentence that was longer than he had hoped.

**Ground 7:** *Ineffective Assistance of Counsel Claims* **– McGill asserts counsel was ineffective for failing to present sentencing arguments about the "clear and convincing" standard required to trigger a departure.**

McGill asserts that his counsel rendered ineffective assistance when they failed to present sentencing arguments about the "clear and convincing" standard required to trigger a departure. (Doc. Nos. 240 at 16-22; 247 at 28-29.)

At the sentencing hearing on December 8, 2011, McGill's attorneys vigorously disputed the need for any departure. See, e.g., R172 at 43-44 (Doc. No. 247 at 29.) Despite defense counsel's efforts, Judge Gonzalez found that the facts supported an upward departure, in this case, established by "heightened clear and convincing standard of proof" and that there were "aggravating circumstances of a degree not adequately taken into consideration by the Sentencing Commission." R184. The sentencing judge, therefore, imposed a single seven-level upward departure based on sentencing guideline § 5K2.8 (extreme conduct). *Id.* As noted above, McGill challenged the upward departure as well as other aspects of his sentence on appeal. Nonetheless, the Ninth Circuit concluded that the sentence was appropriate and lawfully imposed. The appellate court specifically rejected McGill's argument that his sentence was based on consideration of any inaccurate or unreliable facts.

In short, McGill failed to demonstrate that his sentence was imposed in violation of his "right to notice" or was otherwise based on inaccurate information. Accordingly, he cannot demonstrate either deficient performance on the part of his trial counsel in failing to raise an objection to his sentence on these grounds or any prejudice resulting therefrom. As such, he is not entitled to relief.

Accordingly, this claim fails.

///
///
///
///

14

**Ground 8:** *Ineffective Assistance of Counsel Claims* **– McGill asserts counsel was ineffective for failing to test the remaining Mezcal.**

McGill asserts that his counsel rendered ineffective assistance when they failed to investigate the mezcal he had consumed, which could have provided him the "absolute defense of involuntary intoxication." (Doc. Nos. 240 at 22-24; 247 at 29.)

The Ninth Circuit holds that the failure to investigate is especially egregious when a defense attorney fails to consider potentially exculpatory evidence. *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002). However, the duty to investigate and prepare a defense is not "limitless."

McGill contends that prior to the murder, he had been drinking heavily and consumed an extraordinary amount of mezcal. (*See* Doc. No. 240 at 22-23.) He claims that up to 40% of alcohol produced in Mexico is sold in an "adulterated" state, producing at times, heavy health problems to those who consume it. *Id.* As such, Burns was ineffective for not requesting a copy of the government's test results of the Mezcal as well as for not conducting his own tests to determine if it was adulterated. If it was, McGill contends it would have provided him an absolute defense of involuntary intoxication. *Id.* at 24.

The government disputes McGill's argument because "the involuntary intoxication defense has not been recognized in situations involving voluntary ingestion of illegal substances." *Velazquez v. Brazelton*, No. 2:110CV01461 MCE GGH, 2012 WL 5212509, at *8 (E.D. Cal. Oct. 22, 2012). Further, McGill voluntarily ingested the mezcal and consumed the scorpion for its putative hallucinogenic effect. Finally, Mcgill's action's after the beating of his wife to death reflect someone not suffering from a psychological break, but rather a rational and coherent person. (*See* Doc. No. 247 at 29.)

This claim fails because it is not supported by any factual evidence and McGill cannot successfully show that trial counsel was deficient. While counsel does have a duty to make reasonable investigations and to make reasonable decisions that make

particular investigations unnecessary, this duty is not limitless.  See *Strickland*, 466 U.S. at 691; *Hamilton*, 583 F.3d at 1129.  Further, McGill can only speculate that had Cahn and Burns tested the Mezcal, it would have shown it was adulterated thereby explaining his actions that evening.  It would not have.  Even if the Mezcal was found adulterated, it would not have explained McGill's later actions.

A mere possibility of prejudice does not satisfy the Strickland requirement. Accordingly, this claim fails.

**<u>Ground 9</u>: *Ineffective Assistance of Counsel Claims* – McGill asserts counsel was ineffective for failing to file pre-trial motions.**

McGill claims that Cahn and Burns were ineffective because they failed to pursue some unidentified pre-trial motions.  R242 at 8 (Pet.).  *Id*. at 29.

"Mere conclusory allegations do not warrant an evidentiary hearing."  *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).  McGill does not elaborate on what types of pre-trial motions counsel should have filed.  Without more, the Court is unable to determine the validity of McGill's claim.

Thus, this allegation is conclusory, unsupported by any specifics, and subject to summary dismissal.  Accordingly, this claim fails.

## <u>CERTIFICATE OF APPEALABILITY</u>

Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A defendant must obtain a certificate of appealability before pursuing an appeal from a final order in a Section 2255 proceeding.  *See* 28 U.S.C. § 2253(c)(1)(B).  When the denial of a Section 2255 motion is based on the merits of the claims in the motion, a district court should issue a certificate of appealability only when the appeal presents a "substantial showing of the denial of a constitutional right."  28 U.S.C. 2253(c)(2).  The defendant must show that reasonable jurists could debate whether the issues should have been resolved differently or are "adequate to deserve encouragement to proceed further."  *Slack v.*

*McDaniel*, 529 U.S. 473, 438 (2000), quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983), superseded on other grounds by 28 U.S.C. § 2253(c)(2); *see also Mendez v. Knowles*, 556 F.3d 757, 771 (9th Cir. 2009).

The Court has carefully reviewed the Defendant's 2255 motion and considered the record. Because Defendant has not made a substantial showing of the denial of a constitutional right, and because the Court finds that reasonable jurists would not debate the denial of Defendant's motion, the Court declines to issue a certificate of appealability.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's § 2255 Motion. The Court **DECLINES** to issue a certificate of appealability. The Clerk of Court is instructed to enter judgment in accordance herewith and close the related civil case.

**IT IS SO ORDERED.**

Dated: March 29, 2019

_____

HON. ROGER T. BENITEZ
United States District Judge

17